*4
 
 OPINION OF THE COURT
 

 Titone, J.
 

 This case presents the question whether under General Obligations Law §§ 17-101, 17-105 (1) or §17-107 (2) (b) a stipulation settling a foreclosure action could properly be construed as a written acknowledgment of the underlying mortgage debt, a promise to pay or a part payment of that debt sufficient to revive an otherwise time-barred claim based upon the mortgage. Under the circumstances presented in this somewhat idiosyncratic case, we hold that plaintiff’s stale claim on the mortgage was not revived.
 

 Defendant’s decedent, Ralph Peter Piffath, initially borrowed approximately $200,000 from Roslyn Savings Bank (Roslyn) in order to purchase real property located at 35 Gilpin Ave., Hauppauge, New York. In exchange for the loan, he executed a note and a mortgage whose terms required monthly payments for a period of 10 years, with a balloon payment of the remaining principal to be paid on April 1, 1980. Piffath evidently failed to make the balloon payment on time. He and his wife did make a payment of $1,932 on August 7, 1980, but this payment left a substantial balance outstanding. Accordingly, Roslyn instituted foreclosure proceedings.
 

 These proceedings terminated in a settlement that was embodied in a stipulation executed on June 24, 1981. The
 
 *5
 
 stipulation provided that the action was settled "upon the following terms and conditions”:
 

 "1. That defendant, ralph peter piffath, shall pay to the plaintiff the sum of * * * $197,455.57. That in consideration for said payment and subject to collection, [Roslyn] shall deliver an assignment of mortgage in recordable form to defendant’s designee, Gerald piffath [Ralph Piffath’s brother]. The aforesaid assignment shall be without recourse or warranty of any kind * * *.
 

 "2. [Roslyn’s] attorneys agree to make application to the Court for an order vacating the judgment of foreclosure and sale, discontinuing the action and cancelling the notice of pendency of action without cost to either party.”
 

 It is undisputed that Roslyn was paid the $197,455.57 specified in the stipulation, that the foreclosure action was discontinued and that the mortgage was, in fact, assigned to Piffath’s brother. It is also undisputed that Piffath decided to have the mortgage assigned to his brother rather than satisfied and extinguished because he wanted to preserve it as a means of preventing his other lien creditors from levying against his property.
 

 Shortly after this transaction was completed, the mortgage was used as collateral to secure a $50,000 loan made by Marine Midland Bank to Hydrodyne Industries, a corporation that was then controlled by Piffath and his brother.
 
 [1]
 
 As a result of Hydrodyne’s continuing financial difficulties, the Piffaths entered into an arrangement with plaintiff Petito in 1982 under which plaintiff agreed to refinance Hydrodyne’s debt and the mortgage on Piffath’s Hauppauge property was assigned to plaintiff (subject to the pledge to Marine Midland).
 

 In October of 1986, Piffath commenced an RPAPL 1501 (4) proceeding for a declaration that the mortgage no longer had any legal effect because its enforcement was barred by the six-year Statute of Limitations
 
 (see,
 
 CPLR 213 [4]). In response, plaintiff commenced a plenary foreclosure action in Suffolk County in February 1987. The Supreme Court, Suffolk County (Friedenberg, J.), consolidated the two cases for trial in Queens County, and a bifurcated hearing was held before a Judicial Hearing Officer (JHO).
 

 
 *6
 
 With regard to the enforceability of the mortgage, the JHO held that Piffath should be equitably estopped from asserting the Statute of Limitations as a defense because of his conduct in keeping the mortgage alive as a means of "defrauding” his creditors. The JHO also concluded that Piffath was properly held responsible because he had intentionally placed the mortgage in "the field of commerce” when he assigned it to his brother. With regard to the amount owed, the JHO determined that the sum of $183,586.45 was due and that, with interest, costs and disbursements, plaintiff was entitled to recover the sum of $351,486.18. A judgment for that amount was entered against Piffath.
 
 [2]
 

 On cross appeals by plaintiff and Piffath’s administratrix, the Appellate Division modified by changing the last date for the assessment of interest and otherwise affirmed.
 
 [3]
 
 The Court rejected the JHO’s conclusion that Piffath was equitably es-topped from asserting the Statute of Limitations because of his intent to "defraud” his creditors, since "there [was] no evidence that * * * Piffath misled the plaintiff” (199 AD2d 252, 253). Nonetheless, the Court held that enforcement of the mortgage was not barred by the Statute of Limitations. In the Court’s view, Piffath’s 1981 stipulation with Roslyn "amounted to a promise to pay a mortgage debt * * * thereby causing the Statute of Limitations to run anew”
 
 (id.,
 
 at 253, citing General Obligations Law § 17-105;
 
 Aleci v Tinsley’s Enters.,
 
 102 AD2d 808). Plaintiff’s 1987 foreclosure action was therefore timely under CPLR 213 (4). Piffath’s administratrix now appeals by permission of this Court, challenging the latter aspect of the Appellate Division’s analysis.
 

 At the outset, we note our agreement with the Appellate Division’s conclusion that Piffath’s administratrix cannot be estopped from asserting the Statute of Limitations because of Piffath’s so-called "fraudulent” conduct. Although this Court has held that a party may be estopped from pleading the Statute of Limitations as a defense where a "defendant’s
 
 *7
 
 affirmative wrongdoing * * * produced the long delay [in bringing suit]”
 
 (General Stencils v Chiappa,
 
 18 NY2d 125, 128;
 
 see, Simcuski v Saeli,
 
 44 NY2d 442), that principle has no application where, as here, the decedent’s "fraudulent” conduct was not aimed at the plaintiff and did not in any way prevent the plaintiff from commencing a timely action.
 

 The remaining substantive issue, however, is not so easily resolved. Whether an unadorned agreement to pay a sum of money to settle an action on a debt constitutes an acknowledgement of the debt sufficient to renew the running of the Statute of Limitations for enforcement of the debt itself has not been squarely addressed by this or any other appellate court in this State. The issue is squarely presented here because, unlike in most situations in which an action is settled, the settlement in this case did not result in an extinguishment of the underlying instrument evidencing the debt, i.e., the Roslyn mortgage. Instead, because of Piffath’s desire to obstruct his other creditors, the settlement with Roslyn was structured so as to preserve the enforceability and legal effect of that instrument.
 

 Resolution of this controversy depends on the proper application of General Obligations Law §§ 17-101, 17-105 (1) and § 17-107 (2) (b). Section 17-101 provides that "[a]n acknowledgment or promise contained in a writing signed by the party to be charged thereby is the only competent evidence of a new or continuing contract whereby to take an action out of the operation of the provisions of limitations of time for commencing actions under the [CPLR].” Under General Obligations Law § 17-105 (1), "a [written] promise to pay the mortgage debt, if made after the accrual of a right of action to foreclose the mortgage * * *, either with or without consideration” makes the time limited for the commencement of the action "run from the date of the * * * promise.” Finally, under General Obligations Law § 17-107 (2) (b), a partial payment "on account of the indebtedness secured by a mortgage,” is effective to revive an action to recover such indebtedness in favor of the mortgagee "or his assignee” or any other party who subsequently succeeds to an interest in the mortgage’s enforcement.
 

 Plaintiff, the assignee of Roslyn’s mortgage, argues that Piffath’s 1981 agreement to pay Roslyn the sum of $197,455.57 constituted either an acknowledgment of the outstanding mortgage debt within the meaning of General Obligations Law
 
 *8
 
 § 17-101 or a new promise to pay within section 17-105 (1). Alternatively, plaintiff argues that Piffath’s payment of the amount specified in the settlement agreement constituted a partial payment "on account of the indebtedness secured by a mortgage” within General Obligations Law § 17-107 (2) (b) and was therefore sufficient to recommence the running of the six-year Statute of Limitations governing such debts. However, the application of the debt-acknowledgment and partial-payment statutory provisions to these facts is not so clear.
 

 Piffath’s agreement to pay Roslyn $197,455.57 contains neither an express acknowledgment of his indebtedness nor an express promise to pay the mortgage debt per se. Rather, the agreement contained only a promise to pay Roslyn a specific sum in exchange for Roslyn’s agreement to forego prosecution of its foreclosure action and assign the mortgage to Piffath’s nominee. The facts in this case are thus analogous to those in
 
 Morris Demolition Co. v Board of Educ.
 
 (40 NY2d 516), in which this Court held that an executed stipulation partially settling a contractor’s claim for payment for work performed did not constitute an acknowledgment of a larger debt or partial payment of that debt within the meaning of General Obligations Law § 17-101, because the writing "did not recognize an existing debt”
 
 (id.,
 
 at 521;
 
 see also, Connecticut Trust & Safe Deposit Co. v Wead,
 
 172 NY 497). A fortiori, the stipulation in this case, which was followed by actual payment of an outstanding debt that arose pursuant only to that stipulation, cannot be deemed an acknowledgment of an outstanding debt sufficient to restart the running of the Statute of Limitations under General Obligations Law § 17-101.
 
 [4]
 

 Plaintiffs argument predicated on the provisions of General Obligations Law § 17-105 (1) regarding "a [written] promise to pay the mortgage debt” is no more persuasive. The promise to pay $197,455.57 that is contained in the settlement agreement represents Piffath’s undertaking of a new obligation in exchange for Roslyn’s promises to terminate the foreclosure action and assign the mortgage to Piffath’s brother. As
 
 *9
 
 such, it is not a “promise to pay
 
 the mortgage
 
 debt” and consequently does not suffice to satisfy the statute.
 

 For similar reasons, Piffath’s payment of $197,455.57 cannot be deemed a partial payment “on account of the indebtedness secured by a mortgage” under General Obligations Law § 17-107 (2) (b). The defect in plaintiff’s claim under section 17-107 (2) (b) is no different from that of his claim under section 17-105 (1): both the promise to pay and the “part payment” on which plaintiff relies are referable not to the mortgage debt that plaintiff seeks to enforce, but rather to the agreement between Piffath and Roslyn, as to which plaintiff has no rights at all.
 

 Moreover, Piffath’s payment to Roslyn did not satisfy the long-standing rule under section 17-107 (2) (b)’s predecessor that ”[i]n order to make a money payment a part payment within the statute, the burden is upon the creditor to show that it was * * * accompanied by circumstances amounting to an absolute and unqualified acknowledgment by the debtor of more being due”
 
 (Crow v
 
 Gleason, 141 NY 489, 493). The rule is a natural corollary of the principle that there must be sufficient basis "as [would] warrant a jury in finding an implied promise to pay the balance”
 
 (id.,
 
 at 493). Manifestly, such a showing cannot be made where, as here, the payment was pursuant to a settlement intended to put the outstanding monetary obligations between the parties to rest.
 

 In short, neither the settlement agreement nor the payment Piffath made pursuant thereto provides a cognizable basis for ruling that the Statute of Limitations on Piffath’s mortgage debt began to run anew in 1981. Thus, by 1986 — the first time that the courts were called upon to consider the enforceability of the debt — it was time-barred. It follows that the courts below erred in granting plaintiff judgment on that debt.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the Petito complaint dismissed and, on the Piffath complaint, judgment granted declaring that all claims under the bond and mortgage are barred by the Statute of Limitations.
 

 Chief Judge Kaye and Judges Simons, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order reversed, with costs, the Petito complaint dismissed and, on the Piffath complaint, judgment granted in accordance with the opinion herein.
 

 [1]
 

 . The $50,000 had been borrowed to enable Piffath to pay Roslyn the full amount of the agreed-upon settlement.
 

 [2]
 

 . Further proceedings for a foreclosure sale had been rendered unnecessary, because, by agreement of the parties, the Hauppauge property securing the mortgage had been sold and the proceeds secured by a bond to provide a fund against which any judgment in the foreclosure action could be enforced. The parties’ actions in this regard thus resulted in a de facto conversion of the foreclosure action to one for a money judgment alone.
 

 [3]
 

 . The Appellate Division remitted to Supreme Court for a ministerial "recalculation of interest” in accordance with its conclusion that interest should be computed to July 12,1990 rather than May 24,1990.
 

 [4]
 

 . The parties to this appeal have not made any arguments regarding the applicability of General Obligations Law § 17-101’s debt-acknowledgment provisions to a situation where the claimed "acknowledgment” was made to a third-party rather than to the person seeking to enforce the debt. We have thus not considered the degree to which plaintiff’s rights under the statute may have been affected by the fact that Piffath’s purported "acknowledgment” was made to Roslyn and not to him
 
 (see generally, Matter of Kendrick,
 
 107 NY 104;
 
 DeFreest v Warner,
 
 98 NY 217;
 
 cf.,
 
 General Obligations Law § 17-107 [2] [b]).