Batavia Townhouses, Ltd. v Council of Churches Hous. Dev. Fund Co., Inc. (2020 NY Slip Op 05331)





Batavia Townhouses, Ltd. v Council of Churches Hous. Dev. Fund Co., Inc.


2020 NY Slip Op 05331


Decided on October 2, 2020


Appellate Division, Fourth Department


Peradotto, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 2, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., PERADOTTO, NEMOYER, WINSLOW, AND BANNISTER, JJ.


314 CA 19-01672

[*1]BATAVIA TOWNHOUSES, LTD., ARLINGTON HOUSING CORPORATION AND BATAVIA INVESTORS, LTD., PLAINTIFFS-RESPONDENTS,
v
COUNCIL OF CHURCHES HOUSING DEVELOPMENT FUND COMPANY, INC., DEFENDANT-APPELLANT. 






MCCONVILLE, CONSIDINE, COOMAN & MORIN, P.C., ROCHESTER (WILLIAM E. BRUECKNER OF COUNSEL), FOR DEFENDANT-APPELLANT. 
HOLLAND & KNIGHT LLP, WASHINGTON, D.C. (STEVEN D. GORDON, OF THE WASHINGTON, D.C. BAR, ADMITTED PRO HAC VICE, OF COUNSEL), AND HARTER SECREST & EMERY LLP, ROCHESTER, FOR PLAINTIFFS-RESPONDENTS.


Peradotto
 Appeal from an order of the Supreme Court, Genesee County (Timothy J. Walker, A.J.), entered August 19, 2019. The order, inter alia, denied the motion of defendant for summary judgment and granted the cross motion of plaintiffs for summary judgment. 
It is hereby ORDERED that the order so appealed from is unanimously modified on the law by remitting the matter to Supreme Court, Genesee County, for further proceedings in accordance with the following opinion and as modified the order is affirmed without costs.
Opinion by Peradotto, J.:
In this action seeking, inter alia, a declaration that a mortgage is unenforceable on the ground that the limitations period for enforcement thereof had expired, we must determine, among other things, the applicable provision of the General Obligations Law under which the otherwise expired statute of limitations might be revived. We conclude that General Obligations Law § 17-105 (1), and not
§ 17-101, applies in this case.
I.
The undisputed facts establish that plaintiff Batavia Townhouses, Ltd. (Partnership)—which at all relevant times was comprised of defendant, as general partner, and plaintiffs Arlington Housing Corporation and Batavia Investors, Ltd. (collectively, Limited Partner plaintiffs), as limited partners—was formed to acquire and operate an apartment complex that had been owned and managed by defendant. Partnership purchased the apartment complex and executed a wraparound note and mortgage (collectively, mortgage) in favor of defendant that was subordinate to a separate, previously issued loan on which defendant remained the obligor. Income generated by the apartment complex was used by Partnership to pay down the debt under the mortgage and, in turn, those funds were used by defendant to pay down the debt on the loan. Both the loan and the mortgage matured at the beginning of March 2012, and the loan was paid off on schedule, thereby leaving the mortgage as the sole encumbrance on the apartment complex property. After the maturity date, however, payments on the mortgage ceased, and defendant never instituted an action to foreclose on it.
More than six years after the maturity date, the Limited Partner plaintiffs accused defendant of violating its duties as the general partner by keeping rents at the apartment complex artificially low and preventing Partnership from paying off the mortgage, thereby siphoning the [*2]equity interest of the Limited Partner plaintiffs to defendant's own account. The Limited Partner plaintiffs sought to remove defendant as general partner pursuant to the partnership agreement, and litigation then began in federal court concerning the attempted removal. A few months later, defendant's Board of Directors adopted a resolution stating that defendant, as holder of the mortgage, demanded that Partnership resume "monthly debt service payments of interest" on the mortgage. The resolution stated that the purpose for demanding resumption of those payments was because defendant "ha[d] an immediate need for cash resources in order to defend itself and assert its interests in the litigation with the [Limited Partner plaintiffs]." Thereafter, defendant, as general partner of Partnership, made such payments to itself, as holder of the mortgage, which eventually totaled $330,000.
The Limited Partner plaintiffs commenced this derivative action (see Partnership Law § 121-1002) seeking, inter alia, a judgment declaring pursuant to RPAPL 1501 (4) that the mortgage is unenforceable on the ground that the limitations period for enforcement thereof had expired. Defendant appeals from an order that, among other things, denied its motion for summary judgment seeking a declaration that the mortgage is valid and enforceable and granted plaintiffs' cross motion for summary judgment seeking, inter alia, to cancel and discharge the mortgage.
II.
Defendant contends that, under either General Obligations Law
§ 17-101 or § 17-105 (1), its submissions—i.e., Partnership's financial statements that were sent to defendant and the Limited Partner plaintiffs during the relevant period and Partnership's tax returns—establish that the limitations period on a foreclosure action was revived and therefore that the mortgage remains enforceable. We agree with plaintiffs, however, that: (A) only General Obligations Law § 17-105 (1) applies, and (B) the documents submitted by defendant are not sufficient under that subdivision to revive the statute of limitations.
Initially, RPAPL 1501 (4) provides in pertinent part that,
"[w]here the period allowed by the applicable statute of limitation for the commencement of an action to foreclose a mortgage . . . has expired, any person having an estate or interest in the real property subject to such encumbrance may maintain an action . . . to secure the cancellation and discharge of record of such encumbrance."
Thus, a party with an interest in real property that is subject to a mortgage may commence an action seeking to cancel and discharge the mortgage based on the expiration of the six-year statute of limitations applicable to mortgage foreclosure actions (see CPLR 213 [4]; LePore v Shaheen, 32 AD3d 1330, 1330-1331 [4th Dept 2006]). With an exception not relevant to this case, "it is well established that the six-year period begins to run when the lender first has the right to foreclose on the mortgage, that is, the day after the maturity date of the underlying debt" (CDR Créances S.A. v Euro-American Lodging Corp., 43 AD3d 45, 51 [1st Dept 2007]).
Here, it is undisputed that plaintiffs established in support of their cross motion that the six-year limitations period began to run at the beginning of March 2012 and expired at the beginning of March 2018. It is further undisputed that no payments on the mortgage were made by Partnership, the property owner, during that period. Plaintiffs thus met their initial burden of "establishing that more than six years had elapsed since [Partnership] defaulted on the mortgage . . . thereby establish[ing] that a mortgage foreclosure action commenced by defendant would be time-barred" (LePore, 32 AD3d at 1331; see Defelice v Frew, 166 AD3d 725, 726 [2d Dept 2018]). The burden therefore shifted to defendant to raise a triable issue of fact whether the statute of limitations was tolled or revived (see JBR Constr. Corp. v Staples, 71 AD3d 952, 953 [2d Dept 2010]; LePore, 32 AD3d at 1331; see generally Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]).
A.
There are two statutory provisions that potentially apply in this case to revive the otherwise expired statute of limitations. General Obligations Law § 17-101 provides, in relevant part:
"An acknowledgment or promise contained in a writing signed by the party to be charged thereby is the only competent evidence of a new or continuing contract whereby to take an action out of the operation of the provisions of limitations of time for commencing actions under the civil practice law and rules other than an action for the recovery of real property."
Further, General Obligations Law § 17-105 (1) provides, in relevant part:
"A waiver of the expiration of the time limited for commencement of an action to foreclose a mortgage of real property or a mortgage of a lease of real property, or a waiver of the time that has expired, or a promise not to plead the expiration of the time limited, or not to plead the time that has expired, or a promise to pay the mortgage debt, if made after the accrual of a right of action to foreclose the mortgage and made, either with or without consideration, by the express terms of a writing signed by the party to be charged is effective, subject to any conditions expressed in the writing, to make the time limited for commencement of the action run from the date of the waiver or promise."
We agree with plaintiffs for the reasons that follow that General Obligations Law § 17-105 (1), and not § 17-101, applies in this case.
First, the plain language of subdivision (1) of section 17-105 is specifically applicable to waivers of the limitations period for commencement of an action to foreclose a mortgage and promises to pay mortgage debt. As plaintiffs correctly contend, and contrary to defendant's assertion, that subdivision, by its terms, applies to the type of action brought here under RPAPL 1501 (4), which requires the party bringing such an action to establish that the limitations period for the commencement of a mortgage foreclosure action has expired (see generally Albin v Dallacqua, 254 AD2d 444, 444 [2d Dept 1998]).
Second, legislative history supports the conclusion that subdivision (1) of section 17-105 governs here. The Law Revision Commission recognized that the rationale for permitting a mere "acknowledgment" to revive a general or contractual debt—i.e., that such acknowledgment implied a new promise to pay the debt supported by moral consideration of the previous obligation—is inapplicable to the acknowledgment of a mortgage lien on real property because a mortgage is not a promise but rather an executed transaction creating an interest in real property (see 1961 Rep of NY Law Rev Commn, reprinted in 1961 McKinney's Session Laws of NY, at 1873-1874). The Commission thus proposed a separate provision—eventually codified as General Obligations Law § 17-105—that would clarify whether a transaction should be given the effect of either tolling the limitations period applicable to a mortgage foreclosure or reviving that limitations period after it had run (see id. at 1875-1876). The determination whether a transaction should be given those effects was to be controlled by two factors: (1) whether the transaction manifested an intention to waive the limitations period or not plead it, and (2) whether the transaction expressing such intent was sufficiently evidenced (see id.). With respect to the first factor, the Commission listed several ways in which the requisite intention might manifest itself, including an express waiver of the limitations period and a promise not to plead it (see id.). Critically, an intention to waive the limitations period would also "reasonably . . . be inferred from an express promise to pay the mortgage debt, made after the accrual of a right of action to foreclose the mortgage" (id.; accord § 17-105 [1]). In sum, subdivision (1) of section 17-105 was enacted specifically to address the waiver of the statute of limitations applicable to mortgage debt and, in doing so, provided that an express promise to pay such debt made after the accrual of the right to foreclose would be sufficient to revive the otherwise expired statute of limitations.
Third, a leading treatise on mortgage foreclosure law in New York likewise reinforces the [*3]conclusion that subdivision (1) of section
17-105, and not section 17-101, applies. The treatise states, in relevant part, that "the statutes must be read carefully as a cursory look at General Obligations Law section[] 17-101 . . . might lead one to the erroneous conclusion that [it is] applicable to mortgage foreclosures; in fact, it is the provisions of [General Obligations Law § ] 17-105 that are controlling" (1 Bergman on New York Mortgage Foreclosures § 5.11 [7] [2020]).
Fourth, principles of statutory construction support the same conclusion. Even assuming, arguendo, that the inapplicability of section 17-101 to "an action for the recovery of real property" does not remove from its scope actions under RPAPL article 15, we conclude that those principles still dictate that subdivision (1) of section 17-105 applies here. It is well established that, "whenever there is a general and a specific provision in the same statute, the general applies only where the particular enactment is inapplicable" (Matter of Perlbinder Holdings, LLC v Srinivasan, 27 NY3d 1, 9 [2016]; see McKinney's Cons Laws of NY, Book 1, Statutes § 238). Section 17-101 is a general provision applicable to all types of contractual debts, whereas subdivision (1) of section 17-105 is a specific provision applicable to mortgage debts and, therefore, that subdivision is the applicable provision here. Defendant nonetheless asserts that the statutory structure supports the conclusion that a mere acknowledgment—as opposed to a promise—is effective to fulfill subdivision (1) of section 17-105. We reject that assertion. While an acknowledgment of mortgage debt is certainly inherent in a promise to pay that debt, it does not follow that mere acknowledgment is sufficient to fulfill the requirements of subdivision (1) of section 17-105 because that subdivision requires something more in the form of an express promise to pay (see Petito v Piffath, 85 NY2d 1, 8-9 [1994], rearg denied 85 NY2d 858 [1995], cert denied 516 US 864 [1995]; see generally 1 Bergman on New York Mortgage Foreclosures § 5.11 [6] [a]).
Fifth, case law to which we are bound does not compel a different conclusion. Defendant correctly notes that the Court of Appeals has analyzed the sufficiency of evidence under both section 17-101 and subdivision (1) of section 17-105 in a mortgage debt case (see Petito, 85 NY2d at 4-9). However, upon our review of the underlying appellate decision in Petito (199 AD2d 252, 253 [2d Dept 1993], revd 85 NY2d 1 [1994]), which applied subdivision (1) of section 17-105 only, as well as the parties' briefs at the Court of Appeals, which did not squarely raise the threshold issue concerning the applicability of section
17-101 in mortgage debt cases (see brief for defendant-appellant, available at 1994 WL 16044901; brief for plaintiff-respondent, available at 1994 WL 16044902; reply brief for defendant-appellant, available at 1994 WL 16044903), we conclude that the Court of Appeals in Petito had no occasion to pass on that threshold issue (see generally Naso v Lafata, 4 NY2d 585, 591 [1958], rearg denied 5 NY2d 861 [1958]). Rather, in our view, the more accurate reading of Petito is that the Court of Appeals assumed the applicability of section 17-101 and decided only that, if that section also applied, the subject stipulation in that case did not constitute a sufficient acknowledgment thereunder (85 NY2d at 8).
B.
In light of our determination with respect to the applicable statutory provision, whether the documents submitted by defendant were sufficient to revive the statute of limitations depends on whether those documents constitute "a promise to pay the mortgage debt . . . made after the accrual of a right of action to foreclose the mortgage and made, either with or without consideration, by the express terms of a writing signed by the party to be charged" (General Obligations Law § 17-105 [1]).
As Supreme Court properly concluded, the financial statements submitted by defendant do not meet the requirements of subdivision (1) of section 17-105 because those documents merely list the mortgage as a liability and do not constitute an express promise to pay the mortgage debt (see Petito, 85 NY2d at 8-9; Filigree Films, Inc., Pension Plan v CBC Realty Corp., 229 AD2d 862, 863 [3d Dept 1996]; cf. National Loan Invs., L.P. v Piscitello, 21 AD3d 537, 538 [2d Dept 2005]; Albin, 254 AD2d at 445).
We agree with defendant that the court erred in failing to consider the tax returns it submitted. "Although defendant 'could not rely in support of [its] motion on evidence submitted for the first time in [its] reply papers[,]' . . . the [tax returns] were submitted by defendant in [*4]opposition to plaintiff[s'] cross motion, and were not merely reply papers in support of its own motion" (Pittsford Plaza Co. LP v TLC W. LLC, 45 AD3d 1272, 1274 [4th Dept 2007]). Nonetheless, even when properly considered, the tax returns merely reflect that Partnership had unspecified nonrecourse loans on its balance sheets and do not constitute an express promise to pay the mortgage debt (see Petito, 85 NY2d at 8-9).
Based on the foregoing, we conclude that defendant failed to raise a triable issue of fact whether the statute of limitations was revived pursuant to the applicable General Obligations Law § 17-105 (1) (see generally LePore, 32 AD3d at 1331).
III.
Defendant further contends that the court erred in concluding that the recommencement of mortgage payments did not revive the limitations period under General Obligations Law § 17-107. Although a partial payment can be effective in reviving the statute of limitations period (see id.), the court concluded that the payments were void ab initio because defendant's actions to recommence payment on the mortgage in the midst of litigation over whether defendant should be removed as general partner constituted a breach of fiduciary duty. We see no basis to disturb the court's determination.
The partnership agreement specified that the agreement would be governed by the law of the District of Columbia. The governing law permits partnerships to modify the duties among the partners by identifying "specific types or categories of activities that do not violate the duty of loyalty, if not manifestly unreasonable" (DC Code Ann § 29-701.07 [b] [5] [A]). Here, the partnership agreement provided that the general partner would not be liable to Partnership or the Limited Partner plaintiffs for any loss arising from the action of the general partner if the general partner, in good faith, determined that such action was in the best interests of Partnership and such action did not constitute negligence. With respect to good faith, as the court properly noted, "partners owe each other the duty of 'the utmost good faith in all that pertains to their relationship' " especially "in the case of managing general partners in a limited partnership, on whose good faith the other partners depend entirely" (Washington Med. Ctr., Inc. v Holle, 573 A2d 1269, 1285 and n 26 [DC Ct App 1990]).
Contrary to defendant's contention, we agree with the Limited Partner plaintiffs that defendant's conduct in compelling Partnership to recommence payments on the mortgage after the statute of limitations expired and thus became unenforceable was to the detriment of Partnership. The record establishes that, in the midst of litigation with the Limited Partner plaintiffs regarding whether it should be removed as general partner, defendant diverted $330,000 from Partnership to pay a time-barred mortgage for the purpose, as stated by defendant's Board of Directors, of generating funds for defendant to defend its own position in that litigation. In doing so, defendant either negligently failed to ascertain the enforceability of the mortgage debt against Partnership, or it acted with a lack of good faith to Partnership by making payments that it knew to be unenforceable. " 'Good faith [does] not permit any one partner to advantage [itself] singly and alone, at the expense of the [partnership]' " (Marmac Inv. Co. Inc. v Wolpe, 759 A2d 620, 626 [DC Ct App 2000]).
IV.
Finally, although the court reached the correct result with respect to the motion and cross motion, it should have issued a judgment declaring the rights of the parties in compliance with RPAPL article 15 because this is an action seeking a declaratory judgment pursuant to that statute (see RPAPL 1501 [4]; 1521). Accordingly, the order should be modified by remitting the matter to Supreme Court to grant an appropriate judgment (see Corrado v Petrone, 139 AD2d 483, 485 [2d Dept 1988]; see generally JBR Constr. Corp., 71 AD3d at 953; LePore, 32 AD3d at 1331).
Entered: October 2, 2020
Mark W. Bennett
Clerk of the Court