21-37-cv (L)
*Bainbridge Fund Ltd. v. The Republic of Argentina*

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
# 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔖𝔢𝔠𝔬𝔫𝔡 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

August Term 2021

(Argued: March 2, 2022       Decided: June 22, 2022)

Docket Nos. 21-37, 21-38

_____

BAINBRIDGE FUND LTD.,

*Plaintiff-Appellant*,

v.

THE REPUBLIC OF ARGENTINA,

*Defendant-Appellee.*

_____

Before:

WALKER, LEVAL, and PARK, *Circuit Judges*.

Plaintiff Bainbridge Fund Ltd. is the beneficial owner of bonds issued by the Republic of Argentina. Argentina defaulted on these bonds back in 2001, but Bainbridge didn't sue to recover on them until 2016. The United States District Court for the Southern District of New York (Preska, *J.*) dismissed Bainbridge's claims as untimely under New York's six-year statute of limitations for contract actions, *see* N.Y. C.P.L.R. § 213, relying on our nonprecedential decisions in *Lucesco Inc. v. Republic of Argentina*, 788 F. App'x 764 (2d Cir. 2019), and *Bison Bee LLC v. Republic of Argentina*, 778 F. App'x 72 (2d Cir. 2019). Bainbridge appeals, asking us to reconsider those decisions. Specifically, Bainbridge argues that (1) the twenty-year statute of limitations for recovery on certain bonds under N.Y. C.P.L.R. § 211(a) applies to its claims against Argentina; and (2) even if the six-year limitations period for contract actions applies, it was tolled under N.Y. Gen. Oblig.

Law § 17-101 because Argentina "acknowledged" this debt when it publicly listed the bonds in its quarterly financial statements (the "Quarterly Reports").

We reject these arguments. First, the twenty-year statute of limitations does not apply to claims on Argentine bonds because a foreign sovereign is not a "person" under N.Y. C.P.L.R. § 211(a). Second, tolling under N.Y. Gen. Oblig. Law § 17-101 is inapplicable because the Quarterly Reports did not "acknowledge" the debt at issue in a way that reflected an intention to pay or seek to influence the bondholders' behavior. To the contrary, Argentina repeatedly stated that the bonds "may remain in default indefinitely." Bainbridge's claims are thus time-barred, and we AFFIRM the judgments of the district court.

ANTHONY J. CONSTANTINI (David T. McTaggart, *on the brief*), Duane Morris LLP, New York, NY, *for Plaintiff-Appellant*.

CARMINE D. BOCCUZZI, JR. (Rahul Mukhi, Rathna J. Ramamurthi, Abigail K. Gotter-Nugent, *on the brief*), Cleary Gottlieb Steen & Hamilton LLP, New York, NY, *for Defendant-Appellee*.

PARK, *Circuit Judge*:

Plaintiff Bainbridge Fund Ltd. is the beneficial owner of bonds issued by the Republic of Argentina. Argentina defaulted on these bonds back in 2001, but Bainbridge didn't sue to recover on them until 2016. The United States District Court for the Southern District of New York (Preska, *J.*) dismissed Bainbridge's claims as untimely under New York's six-year statute of limitations for contract actions, *see* N.Y. C.P.L.R. § 213, relying on our nonprecedential decisions in *Lucesco*

*Inc. v. Republic of Argentina*, 788 F. App'x 764 (2d Cir. 2019), and *Bison Bee LLC v. Republic of Argentina*, 778 F. App'x 72 (2d Cir. 2019). Bainbridge appeals, asking us to reconsider those decisions. Specifically, Bainbridge argues that (1) the twenty-year statute of limitations for recovery on certain bonds under N.Y. C.P.L.R. § 211(a) applies to its claims against Argentina; and (2) even if the six-year limitations period for contract actions applies, it was tolled under N.Y. Gen. Oblig. Law § 17-101 because Argentina "acknowledged" this debt when it publicly listed the bonds in its quarterly financial statements (the "Quarterly Reports").

We reject these arguments. First, the twenty-year statute of limitations does not apply to claims on Argentine bonds because a foreign sovereign is not a "person" under N.Y. C.P.L.R. § 211(a). Second, tolling under N.Y. Gen. Oblig. Law § 17-101 is inapplicable because the Quarterly Reports did not "acknowledge" the debt at issue in a way that reflected an intention to pay or seek to influence the bondholders' behavior. To the contrary, Argentina repeatedly stated that the bonds "may remain in default indefinitely." Bainbridge's claims are thus time-barred, and we affirm the judgments of the district court.

# I. BACKGROUND

A.    <u>Factual Background</u>

Bainbridge is the beneficial owner of seven bonds issued by Argentina between 1990 and 1999.[1] In 2001, Argentina "declared a moratorium on the payment of principal and interest with respect to all of its foreign debt," including the bonds at issue here. *See, e.g.*, App'x at 22. In 2005, as part of its debt restructuring, Argentina offered its debtholders the opportunity to participate in a bond exchange (the "Exchange"). Argentina issued a prospectus, notifying creditors that "[e]xisting defaulted bonds eligible for exchange that are not tendered may remain in default indefinitely" and that Argentina "has announced that it has no intention of resuming payment on any bonds eligible to participate in [the] exchange offer." *Id.* at 1075 (alteration in original). In 2010, Argentina again invited debtholders to participate in the Exchange. Argentina issued another prospectus, stating that "[e]ligible [s]ecurities in default that are not exchanged pursuant to the" 2010 offer "may remain in default indefinitely." *Id.* at 26. As with the 2005 exchange offer, Argentina announced that if a holder of defaulted debt "elect[s] not to tender" its debt "pursuant to the [2010 Exchange,]

---

[1] Although Bainbridge sued to recover on seven bonds, this appeal implicates only six of them: the 1993 Trust Deed Bond, two 1992 Floating Rate Bonds, and three Eurobonds.

there can be no assurance that [the debtholder] will receive any future payments or be able to collect through litigation."[2] *Id.* (emphasis omitted). Bainbridge did not participate in either exchange offer. Around the time of these exchange offers, between 2007 and 2015, Argentina's Finance Secretariat of the Tax and Economy Ministry published quarterly statements reflecting its total national debt (the "Quarterly Reports"). The reports listed numerous bonds—including the six at issue on appeal—within the category "Bonds Not Submitted to the Exchange." *Id.* at 468–70, 472–73.

B.     Procedural History

In November 2016, Bainbridge filed two complaints against Argentina in the United States District Court for the Southern District of New York, seeking recovery on seven Argentine bonds issued in the 1990s, all but one of which had matured between 2002 and 2005.[3] At the time of filing, two cases were pending in the district court that raised the same issues and claims as Bainbridge. *See Lucesco,*

---

[2] In the prospectus, Argentina also emphasized that it "has opposed vigorously, and intends to continue to oppose, attempts by holders who did not participate in its prior exchange offers to collect on its defaulted debts through . . . litigation . . . and other legal proceedings against Argentina." App'x at 26.

[3] The first action was brought by Bainbridge on November 4, 2016 and sought recovery on the 1993 Trust Deed Bond and the two 1992 Floating Rate Bonds. The second was filed on November 8, 2016 and implicated the three Eurobonds. The district court deemed the proceedings related and resolved all issues arising from these cases in tandem.

*Inc. v. Republic of Argentina*, 16-CV-7638 (S.D.N.Y.); *Bison Bee LLC v. Republic of Argentina*, 18-CV-3446 (S.D.N.Y.). The district court concluded in those cases that the six-year statute of limitations under N.Y. C.P.L.R. § 213 applied to claims based on Argentina's defaulted bonds and that the limitations period was not tolled based on the Quarterly Reports. *See Lucesco, Inc. v. Republic of Argentina*, 16-CV-7638, 2018 WL 9539167 (S.D.N.Y. Sept. 10, 2018); *Bison Bee LLC v. Republic of Argentina*, 18-CV-3446, 2018 WL 8058126 (S.D.N.Y. Oct. 22, 2018). The district court stayed Bainbridge's actions pending appeal of these decisions.

We resolved both appeals by summary order, concluding that the plaintiffs' claims on Argentine bonds were barred by New York's six-year statute of limitations. We rejected the plaintiffs' reliance on N.Y. C.P.L.R. § 211(a) and N.Y. Gen. Oblig. Law § 17-101. *See Lucesco Inc.*, 788 F. App'x at 767–69; *Bison Bee*, 778 F. App'x at 73. Bainbridge then moved for partial summary judgment on its one claim that was timely under the six-year statute of limitations. Bainbridge agreed that *Lucesco* and *Bison Bee* "foreclose[d]" its claims on the remaining bonds and stipulated "to a proposed order and judgment" disposing of these claims, while "retain[ing] any rights it has to appeal . . . to ask the Second Circuit to reconsider its prior interpretation of New York law." App'x at 631. On December 1, 2020, the

district court entered judgments dismissing these claims. Bainbridge filed timely notices of appeal, and we consolidated the cases on appeal.

## II. DISCUSSION

Bainbridge argues that its claims against Argentina are timely for two reasons. First, the twenty-year statute of limitations in N.Y. C.P.L.R. § 211(a) applies to its claims. Second, even if New York's six-year statute of limitations for breach of contract applies, this limitations period was tolled because Argentina "acknowledged" its debt under N.Y. Gen. Oblig. Law § 17-101. We review the district court's "interpretation and application of a statute of limitations" *de novo*. *Muto v. CBS Corp.*, 668 F.3d 53, 56 (2d Cir. 2012).

A.     N.Y. C.P.L.R. § 211(a)

The statute of limitations for breach of contract claims in New York is generally six years. N.Y. C.P.L.R. § 213(2). Section 211(a) allows a twenty-year statute of limitations for a limited class of actions seeking to recover on certain bonds issued by "the state of New York or . . . any person, association or public or private corporation." N.Y. C.P.L.R. § 211(a).[4] Bainbridge argues that its claims fall

---

[4] Section 211(a) applies only to claims on bonds that (1) were sold after the issuer published "an advertisement for bids" for the bonds in a "newspaper of general circulation" and (2) are "secured . . . by a pledge of the faith and credit of the issuer." N.Y. C.P.L.R. § 211(a). In

under this provision because Argentina is a "person" for purposes of section 211(a).  We disagree and conclude that section 211(a) does not apply to claims against foreign sovereigns.

First, the ordinary meaning of "person" is a natural person.  *See Butterworth v. O'Brien*, 23 N.Y. 275, 280 (1861) (noting that the "common and ordinary signification" of the term "persons" is "natural persons").  The Supreme Court has explained that the common usage of the term "persons" does "not include the sovereign, and statutes employing it will ordinarily not be construed to do so." *United States v. United Mine Workers*, 330 U.S. 258, 275 (1947); *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 273 (2012) ("[T]he word *person* traditionally excludes the sovereign" given "a 'longstanding interpretive presumption' to that effect." (quoting *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 780 (2000)).  New York courts similarly presume that "[t]he word person does not, in its ordinary or legal signification, embrace a

---

2020, after Bainbridge brought suit, section 211(a) was amended to apply to bonds advertised in "electronic or physical form" rather than in a "newspaper of general circulation."

State or government." *In re Fox*, 52 N.Y. 530, 535 (1873), *aff'd sub nom. United States v. Fox*, 94 U.S. 315 (1876).[5]

Second, the ordinary interpretation of "person" gives meaning to each term in the provision. By contrast, Bainbridge's interpretation of "person" in section 211(a) to encompass "any being whom the law regards as capable of rights or duties," Appellant's Br. at 23 (quoting *Person*, Black's Law Dictionary (11th ed. 2019)), would render much of the surrounding language meaningless. Specifically, Bainbridge's proposed interpretation would render superfluous the language specifying that section 211(a) applies to debt issued by "the state of New York" and "any . . . association or public or private corporation." N.Y. C.P.L.R. § 211(a); *see Mestecky v. City of New York*, 30 N.Y.3d 239, 243 (2017) ("We have recognized that meaning and effect should be given to every word of a statute and that an interpretation that renders words or clauses superfluous should be rejected." (cleaned up)); *see also* N.Y. Stat. Law § 231 ("[M]eaning and effect should

---

[5] Bainbridge's assertion that *Fox* is limited to probate proceedings is baseless. First, nothing in *Fox* so limits this presumption. *See In re Fox*, 52 N.Y. at 535 ("The word person does not, in its ordinary or legal signification, embrace a State or government; *and there is no ground to justify such an extension . . . in construing the statute relating to devises*." (emphasis added)). Second, New York courts have applied this presumption in other contexts. *See, e.g., Leonard v. Masterson*, 896 N.Y.S.2d 358, 360 (2d Dep't 2010) (in a case arising from a petition for road access rights, noting that "[i]t has long been the law . . . that the term 'person' generally does not include a governmental entity").

be given to all [of a statute's] language, if possible, and words are not to be rejected as superfluous when it is practicable to give to each a distinct and separate meaning.").

Finally, Bainbridge's reliance on the broad interpretation New York courts have given the term "person" in other contexts is misguided. The statutes Bainbridge relies on—rules concerning intervention, joinder, interpleader, and actions against multiple parties, *see* N.Y. C.P.L.R. §§ 1001, 1002, 1006, 1007, 1013, 3002—are procedural rules of general application. Meanwhile, section 211(a)'s specific articulation of the type of bond-issuers it applies to, as well as the statute's legislative history,[6] confirm that the statute was meant to apply "only to a limited group of bonds and served as a narrow exception to the generally applicable six-year limitations period." *White Hawthorne, LLC v. Republic of Argentina*, 16-CV-1042, 2016 WL 7441699, at *7 (S.D.N.Y. Dec. 22, 2016); *see also* Scalia & Garner, *supra*,

---

[6] In enacting section 211(a), the New York legislature sought to promote the marketability of New York-issued bonds by extending the limitations period for claims relating to such bonds. *See* Report of the Law Revision Commission, Bill Jacket, L 1950, ch. 783 at 46-47; *see also* Letter from Frank C. Moore, N.Y. State Comptroller, to Thomas E. Dewey, N.Y. State Governor (Mar. 30, 1950), Bill Jacket, L 1950, ch. 783 at 20-21. Debt-issuers other than New York were included only to the extent necessary to avoid running afoul of both the New York and Federal Constitutions. *See* Report of the Law Revision Commission at 47–48. The common understanding at the time was that "the 'bonds' other than municipal and State obligations, to which it would apply would be few." Memoranda of the Ass'n of the Bar of the City of New York, Comm. on State Legis. No. 86A, Bill Jacket, L 1950, ch. 783 at 10. There is no indication that the legislature intended to include foreign sovereign debt within section 211(a)'s purview, much less that it did so through an expansive understanding of the word "person."

at 273 (explaining that whether the term "person" includes "artificial persons" "depends on context"); N.Y. Stat. Law § 95, cmt. ("As a general rule, the legislative intent with which statutes are enacted is to be collected from the context, from the occasion and necessity of the law, from the mischief felt, and from the objects and remedy in view."). Moreover, the statutes cited by Bainbridge do not contain a list of other covered entities following the term "person," as in section 211(a). The enumerated list of covered issuers in section 211(a) reflects a legislative intent to limit the statute's reach. N.Y. Stat. Law § 240 ("[W]here a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded.").

In short, the term "person" in section 211(a) does not cover foreign sovereigns, so the twenty-year statute of limitations does not apply to Bainbridge's claims against Argentina.[7]

---

[7] Every court to have considered this issue has similarly concluded that claims against foreign sovereigns do not fall under section 211(a). *See MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486, 516 (S.D.N.Y. 2017), *aff'd*, 719 F. App'x 47 (2d Cir. 2017); *White Hawthorne*, 2016 WL 7441699, at *6; *World Holdings, LLC v. Federal Republic of Germany*, 794 F. Supp. 2d 1341, 1351 (S.D. Fla. 2011), *aff'd*, 701 F.3d 641 (11th Cir. 2012); *Morris v. People's Republic of China*, 478 F. Supp. 2d 561, 571 n.15 (S.D.N.Y. 2007).

B.      N.Y. Gen. Oblig. Law § 17-101

Bainbridge next argues that Argentina's listing of the defaulted bonds in the Quarterly Reports constituted an acknowledgment of debt, which tolled the statute of limitations for Bainbridge's claims. We disagree.

Under New York law, a debtor's acknowledgement of indebtedness may toll the statute of limitations for claims on that debt. This doctrine treats the recognition of debt as "a new promise to pay." *Batavia Townhouses, Ltd. v. Council of Churches Hous. Dev. Fund Co.*, 133 N.Y.S.3d 133, 137 (4th Dep't 2020). "On this new promise . . . the debtor became liable afresh." 31 Williston on Contracts § 79:73 (4th ed. 2021). The acknowledgement must be in writing, "made under such circumstances that" an express promise to pay the debt "may be fairly implied," *Wakeman v. Sherman*, 9 N.Y. 85, 91 (1853), and "must contain nothing inconsistent with an intention on the part of the debtor to pay it," *Lew Morris Demolition Co. v. Bd. of Educ. of N.Y.*, 40 N.Y.2d 516, 521 (1976); *see* N.Y. Gen. Oblig. Law § 17-101.[8] Whether a writing constitutes an "acknowledgement . . . sufficient

_____

[8] N.Y. Gen. Oblig. Law § 17-101 codified this rule and provides that "[a]n acknowledgement or promise contained in a writing signed by the party to be charged thereby is the only competent evidence of a new or continuing contract whereby to take an action out of the operation of the provisions of limitations of time for commencing actions under the civil practice law and rules."

12

to restart the running of a period of limitations depends on the circumstances of the individual case." *Estate of Vengroski v. Garden Inn*, 495 N.Y.S.2d 200, 201 (2d Dep't 1985).

Contrary to Bainbridge's assertions, the Quarterly Reports do not manifest an implied promise by Argentina to pay on the defaulted bonds. The bonds were simply listed by name among numerous others in a category labeled "Bonds Not Submitted to the Exchange." App'x at 468–70, 472–73. As noted above, the Exchange was a process by which Argentina sought to restructure its debt in 2005 and 2010. It offered new bonds in exchange for the old, defaulted obligations, all the while warning that it "ha[d] no intention of resuming payment on any bonds eligible to participate in [the] exchange offer . . . that are not tendered or otherwise restructured as part of such transaction." *Id.* at 24 (2005 exchange offer) (second alteration in original); *see id.* at 1078 (2010 exchange offer). Indeed, Argentina repeatedly stated that it would *not* repay bonds not submitted to the exchange and that these bonds "may remain in default indefinitely." *See, e.g.*, *id.* at 1075. Given these circumstances, listing certain bonds in the Quarterly Reports as bonds not submitted to the Exchange was entirely inconsistent with an implied intent to pay off this debt. Argentina's public posting of debt in this fashion is not an

"acknowledgment" for purposes of tolling the statute of limitations for claims on that debt.[9]

There is also no indication that Argentina meant to influence Bainbridge's actions by listing the defaulted bonds in the Quarterly Reports. For an acknowledgment to toll the statute of limitations under N.Y. Gen. Oblig. Law § 17-101, an implied promise "must be made to the creditor or some one acting for him, or if made to a third person must be calculated and intended to influence the action of the creditor." *Wakeman*, 9 N.Y. at 91–92; *see also Lynford v. Williams*, 826 N.Y.S.2d 335, 337 (2d Dep't 2006) (declining to find an effective acknowledgment when the documents at issue were not "communicated to the plaintiff or to anyone on his behalf, nor intended to influence the plaintiff's conduct"); *DeFreest v. Warner*, 98 N.Y. 217, 221 (1885) (explaining that for an acknowledgment to be "just as effectual to defeat the statute of limitations as if it had been made directly to the creditor or his authorized agent," it must "sufficiently appear[] that the intention was that the

---

[9] As Bainbridge notes, an effective acknowledgment does not always have to identify the bond beneficiary or the specific amount owed to a creditor. Here, Argentina may not know the identity of a bond's ultimate beneficiary in part because the bonds may be held through several layers of ownership. New York courts have emphasized that "[i]n determining what constitutes an acknowledgment . . . there is no occasion for resorting to any subtle or refined distinctions contrary to ordinary business understanding and rules of common sense." *Curtiss-Wright Corp. v. Intercontinent Corp.*, 97 N.Y.S.2d 678, 682 (1st Dep't 1950).

declaration made to [the third party] . . . be communicated to and influence the creditor" (cleaned up)). Here, the Quarterly Reports were not issued directly to Bainbridge or its authorized agent, and Bainbridge failed to allege that they were "calculated and intended to influence" its actions. *Wakeman*, 9 N.Y. at 92.

Thus, the limitations period for Bainbridge's claims was not tolled under N.Y. Gen. Oblig. Law § 17-101.

## III. CONCLUSION

Argentina is not a bond-issuing "person" covered by N.Y. C.P.L.R. § 211(a), so Bainbridge's claims are governed by New York's six-year statute of limitations for contract claims. Bainbridge's claims here accrued between 2002 and 2005, over a decade before it filed suit. And Bainbridge may not rely on the Quarterly Reports as purported "acknowledgments" of debt that would toll the six-year statute of limitations. The listing of the defaulted bonds on the Quarterly Reports did not manifest an intention by Argentina to pay, and Bainbridge does not allege that the Quarterly Reports were intended to influence its conduct. Bainbridge's claims are thus time-barred, and we affirm the judgments of the district court.[10]

---

[10] We decline Bainbridge's request to certify the questions presented to the New York Court of Appeals. *See* 2d Cir. R. 27.2(a); *DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005) (explaining that certification is inappropriate "where sufficient precedents exist" for us to resolve the appeal).